UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
AUG 3 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-596-GWU

ARNOLD HOWARD,                              PLAINTIFF,

VS.              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment; a portion of the plaintiff's argument can be construed as a motion to remand.

## LAW APPLICABLE TO SUMMARY JUDGMENT MOTIONS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

       Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

       Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Howard

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Howard

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

Howard

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## STANDARDS APPLICABLE TO MOTIONS TO REMAND

In assessing that portion of the plaintiff's brief which could be interpreted as a separate motion to remand, it must be noted the pertinent federal statute provides that:

> The Court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. Section 405(g) (emphasis added).

While "good cause" for failure to incorporate such evidence might be established when the additional records were not compiled until after the administrative hearing, Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the fact that the plaintiff did not seek to have the record remain open to be able to submit evidence mitigates against such a finding, Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

To be "material", the documents must be "both relevant and probative", "bearing directly and substantially on the matter in dispute", or "likely to have produced a different administrative result". Huffler v. Heckler, 59 F. Supp. 626, 627

7

Case: 6:04-cv-00596-GWU Doc #: 7 Filed: 08/31/05 Page: 8 of 13 - Page ID#: 64

Howard

(S.D. Ohio 1984). In order to satisfy this materiality criterion, the claimant must demonstrate that there is a reasonable probability that the Administrative Law Judge (ALJ) would have reached a different conclusion if presented with the new evidence. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988). In determining whether to remand a case, the Sixth Circuit Court of Appeals has distinguished between new evidence of the claimant's condition at the time of the administrative hearing and evidence of a subsequent deterioration or change in his condition. The former is deemed material; the later is not. See Sizemore, 865 F.2d at 712.

## DISCUSSION

The administrative law judge (ALJ) found that Howard suffered from degenerative disc disease and degenerative joint disease (Tr. 15) which restricted the plaintiff to a limited range of medium level work (Tr. 16). Based on the testimony of a vocational expert (VE), however, he concluded that the plaintiff could return to his past work as an industrial lift/truck operator. (Tr. 17). Thus, benefits were denied. (Tr. 18).

In determining whether there was substantial evidence to support the administrative decision, the Court must first look at the parameters of the plaintiff's past work. When the plaintiff originally filed for benefits, he stated that his past work involved lifting up to 100 pounds, with fifty pounds frequently lifted, and 4 to 6 hours

8

of walking a day and one hour of standing. (Tr. 66). At the administrative hearing, however, his testimony appeared slightly different in content–he indicated that he lifted up to 50 pounds, and had had jobs where he could choose between sitting and standing. (Tr. 147). An agency representative at an early point in the proceedings had cited Dictionary of Occupational Titles Section 921.683-050; a close inspection of that section reveals that "industrial truck operator", as performed in the national economy, was a medium level job, with postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling to be performed either never or only occasionally. A vocational expert who appeared at the administrative hearing specifically testified that the past work was possible for an individual with the limitations cited Exhibit 6E. (Tr. 160-161). The question, then, whether these parameters established for the past work fairly depict the plaintiff's condition.

When the plaintiff originally filed for benefits, he alleged that he had been disabled since November, 2001 due to foot and back problems. (Tr. 47, 65). In other forms, the plaintiff also mentioned neck and head pain. (Tr. 74). At the administrative hearing, he emphasized back, neck and feet pain. (Tr. 150-151).

Treating source information submitted to the ALJ is of little help to the plaintiff in his need to establish an inability to return to his past work. An MRI done in August, 2001 showed only mild degenerative changes with no evidence of significant stenosis, or narrowing. (Tr. 88). One treating physician, Walter Downey, recorded the plaintiff's statements about his complaints and noted the fact that the patient was

seeking disability, but he did not himself impose any specific functional restrictions. (Tr. 86-87, 132). Another diagnosed hallux valgus deformity to the bilateral great toe joints of the feet, but did not specifically impose any functional limitations. (Tr. 126). A third, David Hays, diagnosed chronic back pain, neck pain, and symptoms of numbness in the feet, and, on another occasion, hypertension, anxiety and arthritis, but also made no residual functional capacity assessment statements. (Tr. 127, 131).

A consultative examiner, Peter Gurk, saw the plaintiff in January, 2002 and noted no neurological abnormalities, no evidence of scoliosis, no range of motion deficits in the extremities, and no obvious difficulty walking; he did note a prominent hallux valgus[1] deformity of both feet, stiffness of the joints of the shoulders and knees, and crepitus of the knees. (Tr. 97). There were also "significant bunion deformities of both feet", which might be amenable to treatment. (Tr. 98). The doctor concluded that the plaintiff's chronic problems would limit him (in an undefined way) with regard to activities involving "excessive" bending, kneeling, crawling and climbing, as well as over-the-shoulder work. (Id.). Thus, all but perhaps the over-the-shoulder work, which as the defendant notes in her brief, was a somewhat equivocal restrictions were taken into account by the ALJ.

Three months later, another consultative physical examination was performed, this time by Roy Stauffer. (Tr. 99). Tenderness and decreased motion of the cervical

---

[1]This pertains to the great toes. Dorland's Illustrated Medical Dictionary (27th ed.), p. 729.

spine was noted. (Tr. 100). There was tenderness over the metatarsal heads, calluses and bunions on the feet. (Id.) The patient was said to have been unsteady at heel-to-toe walking. (Tr. 101). Straight leg raising was positive. (Id.) However, no deformity of the joints were found, and gait and station were normal.(Id.) Cervical spine x-rays showed marked degenerative disease with "much spurring and lipping", whereas the right knee x-ray was normal. (Id.) The doctor opined that the plaintiff could do medium level lifting, could stand and walk six out of eight hours, as well as climb ramps and stairs, balance, stoop, kneel, crouch, crawl; however, the only limitation that he specifically mentioned was that there would be difficulty climbing ladders, ropes and scaffolds. (Tr. 101-102), which would clearly not have been implicated in the past work.

One medical reviewer opined that the plaintiff could perform medium level lifting, with at least six hours of standing and walking,[2] occasional ramp and stair climbing, occasional crawling, and never climbing ladders, ropes and scaffolds. (Tr. 105- 112, as amended by 113). Another opined that the plaintiff should also occasionally climb stairs and ramps, and stoop. (Tr. 117-121). Thus, it does not appear that any of the restrictions noted ultimately by the medical reviewers would prevent a return to the past work, as it was established in the record before the ALJ.

---

[2] While Medical Reviewer Ross checked a portion of the form suggesting an ability to walk and stand for two hours (Tr. 106, 115), his written comments indicate that he later changed his opinion to six hours based on the second consultative examination results (Tr. 113).

11

Howard

Thus, substantial evidence in the record before the ALJ supports the finding that the plaintiff had not established that he could not return to his past work.

The plaintiff submitted new evidence after the ALJ's final decision, with which he seeks to remand the case under sentence six of 42 U.S.C. Section 405(g).[3] All the new exhibits were dated at least six weeks after the ALJ's decision was entered and are, thus, of questionable materiality. Werner Grentz completed a capacity form at the most remote date (September, 2004); he had also seen the patient in June of that year (after the ALJ's decision) and on no more than two occasions, which indicates a less than long-term relationship, as the defendant points out. David Hays completed a form in July, and strangely mentioned only a June, 2004 office visit; he also deferred an functional capacity estimate to another physician. There was, finally, a cervical MRI report showing what appear to the layman to be severe problems; however, this was done only in May, 2004, and seemingly ordered by a physician not of record previously.[4] The standards for remand have not been met, either.

This the  31  day of August, 2005.

---

[3]There is some dispute about exactly when this information was first submitted. See defendant's brief, at pp. 9-10.

[4]Had Werner Grentz been identified as the ordering physician, and expressed some type of opinion about how long the condition could "relate back", this might have made a difference in the outcome of this case. Obviously, this new evidence suggests a severe deterioration of the plaintiff's condition which would be very pertinent in a new application for benefits.

Howard

*/s/ G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE

13